REBECCA W. TILSON, executrix, *vs.* CRANE BROOK
COMPANY.

Plymouth.   December 2, 1929. — December 31, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Actionable Tort. Water and Water Rights. Great Pond. Negligence,* In
lowering water in great pond. *Law of the Case.*

Where, after this court had decided that there was no evidence of wilful
or malicious injury to the plaintiff by the defendant at the trial of an
action of tort for damage to the plaintiff's cranberries by reason of the
defendant's having lowered the waters of a great pond, the evidence
at a second trial of the action was substantially the same as that at
the previous trial, the issue of wilful or malicious injury was not open
to the plaintiff at the argument of exceptions saved by the plaintiff
at the second trial.

At the trial of an action of tort by the owner of a cranberry bog against one
who maintained a flume with flash boards at the outlet of an adjacent
great pond, for negligently lowering the level of the water of the pond
so that the plaintiff was unable to exercise a privilege which he pos-
sessed to pump water from the pond into his bog, there was evidence
that some of the flash boards in the flume had been removed; that
the water in the pond was lower than it had been at that season for
many years; that the defendant had been directed by the harbor and
land commissioners to replace the flash boards; that he did so within
three weeks thereafter; that, while the plaintiff was working on a
canal leading from the pond to his bog several months before, one
representing the defendant came along and said, "You can't get no
water in there"; and that the plaintiff's cranberries were damaged
by frost a day or two after the defendant had replaced the flash boards.
There was no evidence concerning the defendant's right to raise or
lower the water in the pond, nor that it was the defendant who had
removed the flash boards, nor as to what was the natural level of
the pond or its low water mark.   A verdict for the defendant was
ordered by the trial judge.   *Held,* that

(1) The statement, "You can't get no water in there," was not
evidence to show that the plaintiff's inability to pump water was due
to any act or omission to act by the defendant: it could have been
found to have been merely an expression of the fact that the water in
the pond was too low to be pumped;

(2) There was nothing to show negligence on the part of the de-
fendant;

(3) The verdict properly was ordered in the defendant's favor.

TORT, originally by Wilfred A. Tilson.   Writ dated May
16, 1921.

The amended declaration contained allegations that the defendant "wilfully and maliciously or negligently" lowered the waters of Sampsons Pond in Carver, a great pond, so that the plaintiff was unable to take water from the pond for his adjacent cranberry bog; and that his cranberry crop was destroyed by frost.

After trial of the action in the Superior Court before *Broadhurst*, J., at which there was a verdict for the plaintiff, the action was before this court upon an exception by the defendant to the denial of a motion that a verdict be ordered in its favor; and, by a decision reported in 251 Mass. 337, the exception was sustained, this court being of opinion that no wilful or malicious injury to the plaintiff by the defendant had been shown.

The plaintiff having died thereafter, the executrix of his will was admitted to prosecute the action.

At a second trial of the action before *Sisk*, J., there was evidence that the order of the harbor and land commissioners to the defendant to replace the flash boards in its flume was issued on May 8, 1915; that the statement of O'Brien to Sullivan was made in the fall of 1914; and that the frost which damaged the plaintiff's cranberries occurred on the night of May 29–30, 1915. Other material evidence is stated in the opinion. The judge ordered a verdict for the defendant and reported the action for determination by this court.

*M. Collingwood*, for the plaintiff.

*F. Clark, Jr.*, for the defendant.

CROSBY, J. This is an action of tort to recover damages for the alleged wilful and malicious or negligent lowering of Sampsons Pond, a great pond in the town of Carver, whereby the plaintiff's testator was prevented to his damage from exercising his privilege of pumping water therefrom to protect his cranberry vines. The plaintiff's testator will hereafter be referred to as the plaintiff.

At a former trial of the action in the Superior Court, at the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied and the defendant alleged exceptions. There was a verdict for the

plaintiff in the sum of $3,000. The exceptions were sustained by this court. 251 Mass. 337. Thereafter the case was heard before a judge of the Superior Court and a jury. At the conclusion of the evidence the trial judge, on motion of the defendant, directed the jury to return a verdict in its favor. The case is before this court upon a report. By its terms, if the direction was correct, judgment is to be entered for the defendant; if the judge erred, judgment is to be entered for the plaintiff in the sum of $2,000.

The substantial allegations of the plaintiff's amended declaration and the evidence as to the facts, except in unimportant particulars, are the same as those before the court at the previous trial and set forth in the former decision, and need not be here repeated. In that decision it was held that there was no evidence of wilful or malicious injury to the plaintiff by the defendant, or that the defendant had any malice or ill will toward the plaintiff or purpose to injure him. That decision is *res judicata* on the question of malice or ill will.

The only issue remaining is whether at the last trial there was evidence sufficient to warrant a finding that the damage which the plaintiff sustained was the result of negligence on the part of the defendant, by removing or allowing to be removed or permitting to remain removed one or more flash boards of the flume or dam of the defendant for the purpose of lowering the water of Sampsons Pond below the established low water mark whereby he was unable to pump water for the purpose of flowing his cranberry bog. There was no evidence that the defendant removed planks from the flume at any time. It is recited in the report that "There was no evidence showing who the particular person or persons were that took the planks out of the flume at the mouth of the pond. . . ." There was no evidence that the defendant had any prevision that there would be a frost on May 29 and May 30, 1915, nor evidence of rain between May 26 and June, 1915, but there was evidence that the water in the pond late in April, 1914, was lower than at any time in the memory of witnesses who had observed the height of the water for a period of fifty years. It is stated

in the plaintiff's brief that her testate "introduced evidence to the effect that in May, 1915, the waters of Sampsons Pond were lower than in any May in approximately fifty (50) years." It does not appear that there was water in the pond sufficient to enable the plaintiff to pump it with the appliances which he had and to flow his cranberry bog whether the flash boards were in place or had been removed.

The testimony of the witness Sullivan, employed by the plaintiff as a foreman, that, when he was working on the canal, one O'Brien, the defendant's manager, came along and said, "You can't get no water in there," has no tendency to show that the failure of the plaintiff to get water was due to any act or omission of the defendant. There was no further conversation, and Sullivan stated that he did not know whether O'Brien addressed the remark to him or not. At the time, it appeared, O'Brien was with another person. It could have been found that what was said by O'Brien was merely an expression of a fact that the water in the pond was too low to be pumped upon the plaintiff's cranberry bog, and was not made by reason of any malice or ill will, negligence or purpose to injure the plaintiff.

The report recites that there was no evidence offered as to the right or duty of the defendant to raise or lower the waters of the pond. The plaintiff had been granted a license in 1908 by the harbor and land commissioners "to install a certain canal and pump on the shore" of the pond allowing him to withdraw water from the pond upon certain conditions. One of the conditions prohibited him "from taking water for cranberry purposes so as to lower the pond more than forty-eight (48) inches below" a certain bench mark located on the shore. The commissioners in May, 1915, issued an order to the defendant ordering it to replace the flash boards in the flume at the outlet of the pond forthwith. This order was received by the defendant, and there was evidence tending to show that upon receipt of the order the defendant's foreman replaced all the planks in the flume. One Makepeace, the treasurer of the defendant, testified that on or about May 26 or May 27 he went to the flume

at the outlet of the pond and put in flash boards. There is no evidence to show that the defendant did not fully and promptly comply with the order of the commissioners.

For the reasons stated it is plain that there was no evidence which would have warranted a finding that the defendant violated any common law duty it owed to the plaintiff, nor was there any evidence as to the natural level of the pond or of its low water mark; but it appears that a dam and flume at the outlet of the defendant's mill property had been in existence and operation since at least 1850. As the report fails to show that any wrongful act or omission on the part of the defendant caused the damage which the plaintiff sustained, the trial judge rightly directed a verdict in its favor.

In accordance with the terms of the report, the entry must be

*Judgment for the defendant.*